**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OMAR KAHLIFE KING,           Petitioner,      vs. SCOTT KERNAN, Warden,           Respondent. _____/ | CASE NO. CV-F-04-5641 AWI DLB HC  FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS  [Doc. 1] |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### BACKGROUND[1]

On May 24, 2002, following a jury trial in the Fresno County Superior Court, Petitioner was convicted of four counts of second degree robbery. (Cal. Penal Code §§ 211, 212.5(c)).[2]  In a separate proceeding, Petitioner admitted allegations that he had two prior serious felony convictions within the meaning of section 667(a) and three strikes.  The court imposed a term of 110 years to life, consisting of terms of 25 years to life on each of the four substantive offenses and five years on each of the two prior serious felony enhancements.  (Lodged Doc. No. 1).

---

[1] This information is derived from the petition for writ of habeas corpus and Respondent's answer.

[2] All future references are to the California Penal Code unless otherwise indicated.

1

1   Petitioner filed a timely notice of appeal in the California Court of Appeal, Fifth Appellate
2   District.  On May 13, 2003, the Court of Appeal affirmed the judgment and sentence.  (Lodged Doc.
3   No. 3.)

4   On June 23, 2003, Petitioner filed a petition for review with the California Supreme Court.
5   (Lodged Doc. No. 4.)  On July 30, 2003, the California Supreme Court denied the petition for
6   review.  (Lodged Doc. No. 5.)

7   Petitioner filed the instant petition for writ of habeas corpus on April 29, 2004.  Petitioner
8   filed an amended petition on November 1, 2004.  (Court Doc. 4.)

9   On February 9, 2005, Respondent filed a motion to dismiss the petition as containing both
10  exhausted and unexhausted claims.  (Court Doc. 7.)  On March 14, 2005, Petitioner filed a motion to
11  withdraw the unexhausted claims.  (Court Doc. 9.)

12  On March 22, 2005, the Court issued Findings and Recommendations recommending that
13  Petitioner's request to withdraw the unexhausted claims be granted and Respondent's motion to
14  dismiss be denied as moot.  On May 24, 2005, the Findings and Recommendations were adopted in
15  full, the unexhausted claims (claims two and four of petition) were withdrawn from the petition, and
16  the second amended petition was filed with the Court.

17  On January 9, 2006, Respondent filed an answer to the second amended petition.  Petitioner
18  filed a traverse on January 23, 2006.

19                          STATEMENT OF FACTS
20  Washington Mutual Bank Robbery on May 24, 2001

21  On May 24, 2001, a man entered the Washington Mutual Bank on the corner of First and
22  Shaw Streets in Fresno, California and handed a note to the teller, Roberta Gould.  (RT 26-27.)  The
23  note stated to keep smiling, he had a gun, to give him all her money, and to give him large bills,
24  excluding any bait money or dye pack.  (RT 26-27, 39.)  Ms. Gould, after reading the note, was
25  scared and nervous and gave the man approximately $6,000.  (RT 28.)

26  Ms. Gould described the robber to police as a heavy-set "colored man," approximately five
27  feet six or seven inches tall.  (RT 33.)  Four to five months following the robbery, Ms. Gould picked
28  Petitioner's photograph out of a police lineup.  (RT 36, 39.)  She also identified Petitioner as the

1  robber during trial.  (RT 37, 41.)

2  Bank of America Robbery on May 26, 2001

3       On May 26, 2001, a man went into the Bank of America on East Shaw Road in Fresno,
4  California and handed a note to teller Megan Thompson.  (RT 45-47.)  The note stated to give him
5  all the money, no bait money, and that he would not hesitate to kill her.  (RT 47.)  She gave him
6  $9,000.  (RT 47, 53.)

7       Ms. Thompson's friend, Bree Jones, had been waiting in the teller line to visit with her.  (RT
8  126.)  Ms. Jones recalled that when she pulled into the bank parking lot, she saw a man, who she
9  identified as Petitioner at trial, who held the door open for her.  (RT 126.)  She let him go ahead of
10 her in line, and after he was done, she walked up to Ms. Thompson who was crying.  (RT 126.)

11      Ms. Thompson described the robber as a black man without facial hair.  (RT 48.)  At trial,
12 she identified Petitioner as the robber.   (RT 50.)  She conceded that the surveillance video of the
13 incident demonstrated that the robber had a beard.  (RT 53.)

14 Washington Mutual Bank Robbery on August 17, 2001

15      On August 17, 2001, a man entered Washington Mutual Bank in Fresno, California and
16 handed a note to Sherri Young.  (RT 124.)  The note stated, "This is a robbery.  I have a gun.  No
17 bait, no dye, hurry up, and nobody gets hurt."  (RT 124.)  Ms. Young gave him all the bills she had.
18 (RT 124.)

19      The man then fled, and Ms. Young told the teller next to her, Maryann Garcia, she had been
20 robbed.  (RT 108.)  Ms. Garcia saw a black man with medium build and height leaving the bank.
21 (RT 108.)  At trial, she identified Petitioner as the person in the surveillance video as the robber.
22 (RT 108-113, 119.)

23 Wells Fargo Bank Robbery on September 22, 2001

24      On September 22, 2001, a man entered the Wells Fargo Bank in Fresno, California and
25 handed a note to teller Lily Bessonow.  (RT 168.)  The noted stated that this is a robbery, he has a
26 gun, and to give him large to small bills.  (RT 168.)  Scared, Ms. Bessonow handed him stacks of
27 bills, and he walked out of the bank.  (RT 169.)  She described the robber as black with facial hair,
28 and about five feet six inches tall.  (RT 170.)

Soon after the robbery, Fresno Police Officer Peter Marez responded to the area and started looking for a man matching the description of the robber that was being broadcast on his dispatch radio. (RT 153.) Officer Marez observed a man fitting the description who was jogging, and holding his pants up, with his hand underneath his tee-shirt. (RT 152.) Officer Marez followed the man and eventually caught up to him. (RT 158.) The individual identified himself as Robert Marvin Jones but later admitted he was Omar King. (RT 158, 185.)

Ms. Bessonov was shown the man that police caught and she identified him as the robber. (RT 175.) The man that she identified was Mr. King. (RT 176.)

In furtherance of the investigation, Officer Marez conducted a consensual search of the apartment belonging to Petitioner's cousin Danea Stiner. (RT 158-160.) In the southeast bedroom they found cash stashed in the bed sheets and adult male clothing. (RT 183.) Petitioner, his cousin Ms. Stiner, and her children were living in the apartment. (RT 181.)

During the police interview, Petitioner admitted this robbery. (RT 177-179.) Petitioner stated he picked these four banks to rob because they did not have any bullet-proof glass, barriers, or security guards. (RT 94-95.) Petitioner stated that he would take the blame for the robberies if the police would not involve his cousin or her children. (RT 181.)

### DISCUSSION

A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97

F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.      Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted).  "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and

1  convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769
2  (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380,
3  1388 (9th Cir. 1997).

4  C.     Ineffective Assistance of Appellate Counsel

5        Petitioner contends that his appellate attorney refused to raise issues in the opening brief even
6  after Petitioner presented the issues.  Petitioner further contends that appellate counsel filed a Wende
7  brief without a request for withdrawal motion to accompany the Wende brief.

8        Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the
9  Fourteenth Amendment.  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective
10 assistance of appellate counsel are reviewed according to Strickland 's two-pronged test.  Miller v.
11 Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th
12 Cir.1986); See also Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346, 353-54 (1988) (holding that where a
13 defendant has been actually or constructively denied the assistance of appellate counsel altogether,
14 the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland
15 does apply where counsel is present but ineffective).

16       To prevail, Petitioner must show two things.  First, he must establish that appellate counsel's
17 deficient performance fell below an objective standard of reasonableness under prevailing
18 professional norms.  Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 2064 (1984).
19 Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability
20 that, but for counsel's unprofessional errors, she would have prevailed on appeal.  Id. at 694.  A
21 "reasonable probability" is a probability sufficient to undermine confidence in the outcome.  Id. The
22 relevant inquiry is not what counsel could have done; rather, it is whether the choices made by
23 counsel were reasonable.  Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.1998).

24       An ineffective assistance claim based on appellate counsel's filing of a Wende brief is also
25 reviewed under the Strickland standard.  Smith v. Robbins, 528 U.S. 259, 285 (2000).  Petitioner
26 must first show that counsel was objectively unreasonable in failing to find arguable issues to appeal,
27 i.e., that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising
28 them.  Then, Petitioner must demonstrate prejudice, i.e., a reasonable probability that, but for his

1  counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal. Id. As
2  with all ineffective assistance claims, the Court may first evaluate the prejudice prong, and dispose
3  of the claim if there is no such showing. Id., 528 U.S. 286, n. 14.

4        As a threshold matter, Respondent contends that Petitioner has not exhausted this claim
5  because it was not properly presented to the state courts for review. Respondent's argument is
6  correct. First, Petitioner did not present his claim of ineffective assistance of appellate counsel to the
7  state courts. Second, Petitioner raised his claim that appellate counsel filed a Wende brief without a
8  proper request for withdrawal for the first time in his petition for review in the California Supreme
9  Court. (Lodged Doc. No. 4.) A petition for review to the California Supreme Court is a
10 discretionary appeal. See Cal. Rules of Court, Rule 8.500(b). Petitioner did not fairly present this
11 claim to the state court because it was presented for the first time in a procedural context, a petition
12 for review, in which the merits of the claim would not be considered. See Castille v. Peoples, 489
13 U.S. 346 (1989); Casey v. Moore, 386 F.3d 896, 916-918 (9th Cir. 2004). However, as set forth
14 below, notwithstanding the exhaustion requirement, this Court will recommend that Petitioner's
15 claim be denied as it is without merit. See 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of
16 habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust
17 the remedies available in the courts of the State"); Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir.
18 2005) (a federal court considering a habeas petition may deny an unexhausted claim on the merits
19 when it is perfectly clear that the claim is not "colorable").

20       As Respondent correctly submits, Petitioner does not identify the issues his appellate attorney
21 failed to raise on direct appeal, nor does he show that his counsel failed to raise a non-frivolous
22 issue. Consequently, Petitioner has not demonstrated how he was prejudiced. Thus, Petitioner's
23 claim fails on the merits.

24       Additionally, Petitioner cites no authority for his claim that his appellate counsel was
25 required to file a request for withdrawal with his Wende brief. In fact, the United States Supreme
26 Court has found that California's Wende brief procedure is constitutional. Smith v. Robbins, 528
27 U.S. 259 (2000). Under this procedure, counsel does not have to move to withdraw, which was one
28 of the reasons the Supreme Court upheld California's Wende procedure. Id. at 262. Therefore,

Petitioner's claim is without merit.

D.      State Court Jurisdiction Over Crimes

Petitioner contends that the state court exceeded its jurisdiction by charging and convicting Petitioner of four counts of second degree robbery because his crimes were federal offenses.

Initially, as with the first claim, Petitioner has not exhausted this claim because it was not fairly presented to the state courts. For the purpose of exhausting state remedies, a claim for relief in habeas corpus must include a statement of the facts and a reference to a specific federal constitutional guarantee that entitle the petitioner to relief. Gray v. Netherland, 518 U.S. 152, 162-163 (1996).

In his Wende brief, Ground Three stated "Jurisdiction - multiple counts of federal insured banks, should have federal jurisdiction?" (Lodged Doc. No. 3.) As Respondent submits, this claim was unintelligible and certainly did not provide the factual or legal predicate entitling Petitioner to relief. In construing the claims raised in the Wende letter, the Court of Appeal did not decide any claim regarding the state court's jurisdiction over Petitioner's crimes. (Lodged Doc. No. 1.) In his petition for review, Petitioner raised for the first time his more intelligible claim that the state court did not have jurisdiction over his federal offenses. (Lodged Doc. No. 4.) However, as previously stated, Petitioner did not fairly present this claim to the state court because it was presented for the first time in a procedural context, a petition for review, in which the merits of the claim would not be considered. See Castille v. Peoples, 489 U.S. 346; Casey v. Moore, 386 F.3d at 916-918. Nonetheless, as set forth below, notwithstanding the exhaustion requirement, this Court will recommend that Petitioner's claim be denied as it is without merit. See 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); Cassett v. Stewart, 406 F.3d at 624 (a federal court considering a habeas petition may deny an unexhausted claim on the merits when it is perfectly clear that the claim is not "colorable").

As Respondent correctly argues, Petitioner cites no authority to support his contention that the state court did not have jurisdiction over his offenses because they were exclusively under the jurisdiction of the federal courts. To the contrary, as in this instance, an act may be criminal under

1  the laws of both jurisdictions.  <u>Toles v. United States</u>, 308 F.2d 590, 594 (9th Cir. 1962) (citing
2  <u>Westfall v. United States</u>, 274 U.S. 256 (1927) (Court concluded both Congress and the State may
3  punish the crime of bank robbery).)  Accordingly, Petitioner's claim is without merit.

4  RECOMMENDATION

5     Based on the foregoing, it is HEREBY RECOMMENDED that:

6     1.    The petition for writ of habeas corpus be DENIED; and

7     2.    The Clerk of Court be directed to enter judgment in favor of Respondent.

8     This Findings and Recommendations is submitted to the assigned United States District
9  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the
10 Local Rules of Practice for the United States District Court, Eastern District of California.  Within
11 thirty (30) days after being served with a copy, any party may file written objections with the court
12 and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate
13 Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within
14 ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.  The Court will
15 then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are
16 advised that failure to file objections within the specified time may waive the right to appeal the
17 District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

18    IT IS SO ORDERED.

19    Dated:  **June 18, 2007**          **/s/ Dennis L. Beck**
                                          UNITED STATES MAGISTRATE JUDGE